Good morning, Your Honors. My name is Xiang Yuan. I represent the petitioner in this case. This is a case about the asylum application to the China One Child Policy. I will just address two issues to the brief of the government. The first one is that the government challenged the court does not have jurisdiction on the case because only the husband's name was used in the petition. The thing is that in the immigration court, there are three family members. They are all respondents, so this is one case. They are together. It's undivided. And more importantly is that that's the name the Board of Immigration Appeals used in their certification sheet. There's a final case sheet on top of the administrative record. That's the name they used to represent the three members of the family. So that's why we use the – I think the court does have jurisdiction. The second issue is about the substantive – KAGAN Have you had any case law at all in that question? GONZALES As to – KAGAN As – what we have here, there was certainly a lot of confusion going – because the asylum petition was filed by the wife. GONZALES Yes. KAGAN The I.J. decided it that way. The appeal to the BIA was in those terms, but then the BIA seemed to have flipped the name. GONZALES Yes. In the record, we can see that the BIA sometimes used the wife's name, then sometimes used the husband's name. If I use a wife's name, the government may say, oh, the government is in agreement with his right. And then there's confusion. But primarily, the last page on top of that administrative record is the husband's name to represent the family. KAGAN But isn't that because that's the appeal – that's the petition for review you filed? GONZALES Yes. That's the – KAGAN So you filed a petition for review for the husband, so they've put together an administrative record for the husband. But why does that prove anything? GONZALES No, no. Your Honor, the – but they do include three numbers of all their – all the three  CHIEF JUSTICE ROBERTS Right. But I think the problem is you only filed a petition on his behalf. Now, it may be that we have to look a little deeper than that on the original error in what the I.J. – the BIA did with the I.J. But let's assume for the sake of argument that you're limited to the husband's claim, what's your best argument on his claim alone, separated from his wife's claim on the merits? GONZALES There is a case law that says that the husband is entitled to asylum relief if the wife was persecuted. Assuming that the court thinks this is only filed on behalf of the husband. If the husband is getting the relief from the court, then the wife will be entitled to asylum, too. And so does the other family member. But I do believe this is an undivided case. This is all together. It's one case in the immigration court with three respondents on the record. As to the confusion, I believe it's a confusion from the Board of Immigration Appeal. It's not because of my petition paper. If the court looks at the other men's record, the BIA has – sometimes has the husband's name, sometimes has the wife's name only. So it's kind of confusion. CHIEF JUSTICE ROBERTS Okay. Do you want to get to your second case? The second is about the rule of substantive evidence. We submit that the country report that the immigration judge relied has very minimal value. The reason being that as to the country report, that portion in particular was not from the State Department to interview those people, go back to China and have two children. That interview was from the government to ask a Shanghai official asking about their one-child policy. It's like – in nature, it's like a question of do you guys persecute those people? So from a Shanghai official, there's no reason to believe that he would give any negative comments on that in that regard. So we believe that that portion of the country report has very limited value as evidence. And the immigration judge did not have – actually have adverse findings as to the – as to the Petitioner's testimony. Actually, the government interrupted the testimony and they started to read from the country report. And from there on, the Petitioner just had to defend against the country report. So if the immigration judge did not have adverse findings, then the Petitioner's testimony should be deemed credible. And so the question is to evaluate the weight of the testimony versus country report. And we submit that because that was from a Shanghai official. There's no reason to believe that that has too much weight. So we submit that the immigration judge did not actually – did not correctly weigh the substantive – to use the rule of substantive evidence. But the rule that you want us to establish here, wouldn't that result in every Chinese family being able – anybody – any Chinese family that comes to this country – and we all know about the one-child policy. If they have one child, then as the wife did here, they can remove – she can have the  And then the immigration judge can go in there and then say, okay, now I want to stay in the United States. I mean, it would be like a floodgate, wouldn't it? Well, Your Honor, it has to do with the will-founded fear. The immigration court did not get into depths of finding the Petitioner's actual fear. If we have – we put too much weight on this country report, then we don't need to have a trial. We can just do a summary judgment saying that – But the problem is that this case is somewhat unusual in that she has no – I gather there's no claim of past persecution. She did not have past sterilization or abortion. Right. But she did have an IUD inserted. Right. Is that – do you – this is one of the things I was going to ask you. Do you assert that that, under the statute, is sufficient? I believe it's sufficient because it was coercive. The Petitioner did testify she wanted to be removed, but the government – the Chinese government did not agree. Any actions that were so coercively to infringe on a person's body should be deemed persecution. So I do think that past persecution is found in this case. But even if the core thing is not found – Is there any – is there any case law recognizing – I mean, we have a recent on-bank opinion about physically coercive gynecological examination, but this wasn't physically coercive. This is to go back to the IUD insertion and failure to allow it to be removed, whether that alone is enough. Is there any case law supporting that? Your Honor, I didn't find any case law to support that. But the government – Well, what you have is – and this was basically Judge Mahan's question. You have a simply a – the evidence, one way or another, is generic. I mean, in other words, it's – as to whether she has a well-founded fear of sterilization if she returns, it's a question of how you understand the policy. Is there anything else we could rely on for that? Because that's not specific to her in any way. Your Honor, I didn't quite get the question. What I mean is that there's no specific evidence specific to her as to what will happen to her if she goes back. Yes. Right? Right. So essentially, you have to rely on the country reports, because what else can you rely on? I think our point is that the immigration judge should ask more about where her well-founded fear is from, because she only got to say about her personal knowledge from her co-worker's experience. So that's where her – But isn't that her lawyer's problem to put that evidence on? Yes. That could be, Your Honor. But then the government just draws all the attention away to the country report. But we're stuck with the record we've got. And the record we've – unless you're going to say there's something – a due process violation in the record, which you haven't claimed. Yeah. I did make that argument. And I think that has something to do with the other part of – in the transcript that there was a internal memo from the INS. I think the content of the memo wasn't so crucial as to this case. But the thing is, the immigration judge showed her – his mentality. He says, oh, I don't want to look at it. You know, you submit something, probably will help her. I don't want to look at it. He just – we don't even know what's in there. So I think this kind of – this kind of affects the due process of the law. Did you make a due process argument in your brief? I don't remember that you did. Not – yeah. All right. So – I did not reply to you in the first brief. Yes, you did. So – I understand. So essentially, on the record that we've got, why did the I.J. so badly err with regard to his assessment of her well-founded faith? Yes, Your Honor. I just reiterate the point just made about to evaluate the testimony which the I.J. did not find any adverse credibility finding, which should be deemed credible. And then the other side is the country report that we – that I submitted. And her testimony was basically that she knew one person who – they didn't say who she knew. She knew a co-worker, yes. And that's her understanding of what she will be subject to if she were to return  Thank you, counsel. Thank you, Your Honor. Thank you. May it please the Court, I represent the U.S. Attorney General, in this case, Alberto Gonzalez. My name is Susan Slater. In 1996, Congress amended the meaning of refugee in the statute to provide asylum for coercive population control practices as a form of political opinion. In 1997, Petitioner came to the United States. In 1997, his wife, Minfan Liang, also left China, Shanghai, to travel to the United States, hoping to have a second child. Their Chinese son traveled as well. In early 2000, Minfan Liang learned she was pregnant and applied within two weeks for asylum, alleging coercive population control persecution, even though that she before she got pregnant had known that asylum was a possibility. She was especially concerned about abortion for pregnancy, but her second child was born in the United States in 2000. In 2000 also, all three Chinese nonimmigrants were charged with overstaying their visas and being removable. All three admitted removability. A hearing on Minfan Liang's asylum claim was held, and Minfan Liang alone testified. The I.J. issued an adverse decision on appeal. The full board reviewed the record, considered Minfan Liang's asylum claims, termed and upheld the I.J. Before the board, Petitioner, in his briefs, in his two briefs, termed Minfan Liang the respondent. And in fact, Judge Fischer, in response to your question about the I.J.'s opinion, there were three numbers, and the I.J. issued three different opinions. They appear in the record at page 2, page 111. And page --- So why isn't the husband's claim at least alive at this point? Your Honor, this Court has jurisdiction under 8 U.S.C. 1252, if at all. And to review a final order, it provides -- Right. It's exclusive and provides that a party must exhaust its administrative remedies. In this case, the only Petitioner for review is Mr. Chen. Minfan Liang failed to- I understand your argument, but why isn't his, if we accept your argument, why isn't his claim still alive in this Court? Your Honor, there, since he, there are, I'd like to address it as one reason and three policy arguments supported by statutes and regulations. The reason is Minfan Liang isn't here and Petitioner doesn't allege that she can bring her denial of asylum to you. So her, her denial of asylum is final. Well, no, what he's, what he's saying is, go ahead. I'm sorry. The Petitioner before you didn't file an asylum application and did not testify before the board. Testify before the immigration. That doesn't matter. I don't see why that would matter. I mean, he could have, he could have found the same case by having his wife testify because of this, you know, extremely peculiar oddity of this particular area of the law where if his wife was correct that he would on his own hook be entitled to asylum. Do you agree with that? Your Honor, I, addressing the three policy arguments I make, I'll, I'll answer that. You're dealing with whether or not he's a derivative beneficiary. No, I'm not. I'm dealing, well, maybe. There are two. But, but certainly the case law is that if, under the Chinese, special Chinese birth control rule or sterilization rule, either spouse can claim the asylum. Your Honor, in 1996, Congress amended the statute. In 1997, the Board of Immigration Appeals issued a ruling that a spouse of someone who has suffered past persecution is also persecuted.  That's what I just said. Yes. And other circuits question that, but your circuit and every circuit goes along with the Board. So there are two issues that I'd like to address talking to you in policy. One is, does, does it matter that he did not submit an asylum application himself? Before, let me stop you right there. Whatever he did, the Board ruled on it. Your Honor, if you read each of the individual Board decisions. Yes. In each one, it says, including sterilization of the lead respondent is speculative. The Board. Yes, but I'm just talking procedurally here. The Board made a decision on his case, and he's taking a petition for review. Now, you're saying the Board shouldn't have reached it at all because he didn't file the application, but they treated it, they construed it as one application, they gave three different orders, and he's appealing from that order. Why don't we have jurisdiction over his case? Well, Your Honor, the issue that came up in the three different numbers is these people were all removable. Yes. So that the Board and the IJA considered removability and the defenses. And the defense was that Min Fan Liang was applying for asylum. Yes. So then the question to decide was, is Mr. Chen one, a derivative beneficiary under 1158, or does Mr. Chen have an asylum right? But the statute provides, as I understand it, that there is a right to appeal to this Court, petition for review, not to appeal, if there is an adverse BIA decision as to you, and here there was one, a freestanding independent adverse BIA decision. So why can't he appeal that? There was an asylum application on his behalf, and even though he was derivative, and the agency made a separate decision as to him, as to which he filed a petition for review. Your Honor, the argument we're making is that there's no jurisdiction to review Min Fan Liang's asylum application. I understand that argument. I understand why. But, frankly, what I'm telling you also is, in a way, because he has a live claim, he was charged with being removable. And so whether or not you could review in a speculative case any type of argument regarding withholding of removal or improper removal, we're not saying that this is a case that raises the issue of jurisdiction in those cases. So the fact that he's here, it's just that he has no arguments to make. Well, aren't you really saying we have jurisdiction, but you disputed on the merits? No. His claim. Well. His freestanding claim. Well, tell me. Because every time you answer the question, you say, his derivative claims are speculative. But that's a merits-based argument. The question is, do we have jurisdiction over his claim? The board decided his claim on the merits is that he did not meet the immigration requirements of the lead respondent, and the judge correctly determined the respondent's burden of proof had not been met. That's the end of the order on his petition. So why can't he appeal that? We agree with it. The claimed fear of persecution, including sterilization of the lead respondent, is speculative. Right. That's a merits argument. You're really making it very difficult for us to focus on the jurisdictional question, which is essentially, as I understand it, that there was he did not file an asylum application himself, but there was one filed on his behalf derivatively. And what I understand you're saying is that it has to go back to that original act, because all the way up after that, he was there were decisions made in his case independently. So if you're saying anything jurisdictionally, it has to be that he can't get asylum because he didn't file an asylum application. So it doesn't do any good for him to come here and petition for a review from what the agency decided on his behalf, because he just can't get asylum, he didn't file an asylum application. Is that what you're saying? No, Your Honor. There are two responses to that. The statute-making of the derivative beneficiary provides that if you're a spouse and you have the right to, you're eligible to file an asylum application, you cannot be a derivative beneficiary, USC 1158. So there are two separate, you have either the right to file an asylum application or you have the right to not participate and be derivative. He cannot be a derivative beneficiary here. There's no jurisdiction, because it's moot. Let me interrupt for a minute. You didn't raise that in front of the BIA, right? No, all three parties were before the BIA. Right. And you didn't argue that he couldn't get asylum because he was entitled to asylum in his own right. You didn't argue before the BIA that he could not be a derivative beneficiary because he could have filed in his own right. Well, Your Honor, since we know nothing about him, we don't know whether he's eligible for asylum. Well, actually, in this very odd situation, we do, because of the case that we were discussing earlier. Unless you argue they're not married, my understanding is that in this completely unique situation, which wouldn't apply to anything except these special Chinese rules, we do know that he's eligible if she's eligible. Well, Your Honor, as I understand it, it's past persecution that automatically past sterilization or abortion. The finding that somebody has a future fear doesn't may or may not relate directly to the spouse. But in this case, we don't really know about him. And it's him and his family. But that's a merits argument, though. No, Your Honor. It's a policy reason and a statutory reason why there should be exhaustion of administrative fear. But he did exhaust. All three claims were considered by the board. They issued three separate orders. They denied his on the merits. You did not contest his right to pursue or his exhaustion at that level. So, I mean, it seems to me you've waived that argument if you're arguing exhaustion because no matter what happened, whether the board should have reached the merits or not, they did. And he's appealing from that. The best we could do is send it back under your theory. I don't see how we lose jurisdiction. We don't lose appellate jurisdiction when there's a live order. Your Honor, the live order of a derivative beneficiary under 1158 is to accompany or follow to join. What's your best case that says we don't have jurisdiction over a petition for review from a BIA decision denying relief to a derivative beneficiary? Mr. Chen cannot accompany or follow to join Min Fen-liang because it's finally been determined that she doesn't have asylum. What you're really saying is it wouldn't do any good for us to grant him, to say that, to reverse on his behalf, because he still is not going to be able to stay because if she goes back, he has to go back. I'm saying that it's a standing argument raised in the reply brief of the Petitioner that his claims, our rights, are irreducible and moot. Once it's determined finally that she has no right to be an asylee, his claim to be a derivative asylee is moot. There's no way that he can be an asylee. It's a standing argument raised in the reply brief of the Petitioner that his claims, our rights, are irreducible and moot. And the fact is, I still don't understand why we don't have jurisdiction. It may or may not do any good for us to grant relief, and maybe we're just chasing our tails here, but the fact is, I still don't understand why we don't have jurisdiction when there's a final order of the BIA in his case. He's entitled to appeal for a right. It may lose on the merits. It may win on the merits. But I don't see how we lose jurisdiction. Well, Your Honor, the reason that exhaustion is required is regulations. But he did exhaust. This deprives the asylum. I don't understand what exhaustion has to do with it. He certainly exhausted. He went all the way through the system. What does exhaustion have to do with it? The only thing that he has exhausted is his right to be a derivative beneficiary. He hasn't exhausted his right to be a primary beneficiary. Does that make sense? That's right. And the reason it's important that a derivative beneficiary not litigate in the court of appeals primary beneficiary's rights is confidentiality. Under 8 CFR 1208, a primary asylum applicant is guaranteed confidentiality. So they can make the decision, even if asylum is denied, that applicant could not want to have the public at large know the applicant's private information. It could be damaging or risky for that applicant, even if asylum is denied. And, therefore, what happens when a derivative beneficiary who may be disaffected or divorced, maybe a separated child, brings an appeal to the court of appeals, because of the briefs and being on the Internet, it is all of the private information about the primary asylum applicant is available to the world at large. Well, we've sure heard a lot of derivative claims on appeal that were freestanding derivative claims. Well, Your Honor, once we've heard claims from people who were divorced, and they were derivative claims based on past persecution. So, again, it gets back to jurisdiction. There may be all sorts of good policy reasons why we ought not to hear the claim or we ought to not admit it, but it's difficult to see why we don't have jurisdiction. Your Honor, I'm sorry, but I've looked, and I haven't found other cases where a court has heard a derivative, have heard a claim of a spouse where the spouse has not filed an application for asylum, has not become a primary asylum applicant like this. I haven't found any case where the person who is bringing their case to the court of appeals hasn't been a primary applicant or there is one case recently decided that went off on whether the attorney was qualified where a child was trying to seek as a derivative beneficiary, arguing that he had a right after the right to be in asylum was granted to the parent. I think one of the bear pain cases dealt with that, if I'm not mistaken. I don't have it at hand, but I think we, I recall quite clearly hearing a case just in this posture that we decided on the merits. So, well, we've exhausted all your time on jurisdiction. Do you want to take two minutes? Yes, Your Honor. Excuse me, Barguendo, that we've reached the merits in this case. You're five minutes over your time, but I'll give you two minutes to talk about the merits. Oh, thank you. Your Honor, the standard of review, as you know, is whether the Board of Immigration The record in this case contains, regarding forced sterilization, exactly three references by Petitioner. Twice, it's a phrase that recites one of the penalties is forced sterilization and then goes on to recite the other penalties. And then the only third reference is that there was a co-worker or a person she knew who had forced sterilization. In opposed to that, the standard of review is substantial evidence. She had the burden of proof. Lengthy, lengthy State Department documents. There's a 1998 profile of asylum claims. This is specifically to guide and aid asylum adjudicators. And 4-2 is a subsection, claims based on birth in the United States. The immigration judge and the Board of Immigration Appeals look to that specific subsection of the analysis of asylum claims to determine whether, as the most cogent, that found that regarding claims based on births in the United States, couples sometimes do file a claim for asylum. They're often scholars. The claim that they make is loss of jobs or imposition of heavy fines. Because that was the case and pursuant to the Asylum Office of State Department's function in providing these profiles of asylum, the Court found in Shanghai specifically that relevant authorities do not always handle such cases strictly. At least some couples that have children. Kagan in which everything is going to turn on the degree of probability and the Supreme Court case says it only needs a 10 percent possibility. So, i.e., that she will be sterilized if she returns. So ultimately what the I.J. had to find, although he didn't really say it this way, is that there wasn't a 10 percent chance that she would be sterilized when she returned. Is that right? Your Honor, yes. Based on the I.J. and the Board accepted it. For example, when you were just reading. I'm sorry. You were just reading and saying this wouldn't always happen or even if it wouldn't happen most of the time. That doesn't support the conclusion. Well, no, Your Honor. The strict enforcement doesn't refer to strict enforcement of sterilization, but strict enforcement of fines. They are at worst given minor fines face no-judge sanction. This is a record at 2-2. And then it goes on and discusses again. This is in Shanghai. A senior planning official told us that fines in the cases of couples returning from abroad would be based on additional social fees. They're not authorized to fine or take other administrative action. Then they interviewed someone from a university in Shanghai, and sometime they found that there were no sanctions. The reason that exhaustion of administrative remedies is important is shown here. Plaintiffs claim that they're not educated, so they are outside of whatever applies with scholars. But in fact, the record shows that Mr. Chen came over under an L visa, which is managerial, executive or specialized skills, and then he applied for and received an F visa to study full-time for 20 months here. But we know nothing about him, so we don't know what kind of education he got for those 20 months, but we know he got 20 months of education. And his wife actually got a year of college during the time when he got the 20 months. Was there an adverse credibility finding in this case? Pardon me, Your Honor? Was there an adverse credibility finding? There wasn't an adverse credibility finding. All right. So we take her testimony as true. And she testified that her husband came here as an executive. Right. And she testified that one of her co-workers suffered severe penalties upon the return to China, right? But, Your Honor, she didn't say the... Go ahead. She didn't say the time that that occurred or... No, but if we accept it as true, I mean, there wasn't... We accept her testimony as true. So if we take that as true, you want to quibble with it, but taking that testimony as true, how does that fit into this case? Well, Your Honor, how it fits in is the country reports consistently, even the country reports that are submitted, were submitted by the Chen's, consistently say the policy is continuing to ameliorate, while in the 80s there was a strict policy... But you can over... A petitioner can overcome a country report by specific testimony. So tell me how, why you don't believe this specific testimony overcomes the country report because the country reports can't trump every time, otherwise we'd have just a generic policy on a certain country. Well, Your Honor, for one thing, petitioner's own testimony was that she only wore an IUD for three months and she went to a health clinic and had it removed because another friend helped her, and she was coming to the United States with the intention of having children, planning to return. And so there's some question about, well, what time are you talking about with a co-worker? You know, what region? The country reports make clear that the place is very important. The place, each province has a different... And this is my point. And so we don't know as far as the place or time of that, but the country reports also make clear that China has a policy not to have coerced population control and regarding Shanghai, particularly, the consul in Shanghai was very active in contributing to these country reports. There's a lot of information that specifically deals with Shanghai. Did the IJ explain why what she said about her co-worker wasn't relevant or pertinent or didn't change his mind about the country reports? Did he deal with it at all? What he dealt with was what she said about herself. I understand that. I'm asking you what he said about this very specific story she told. Your Honor, the IJ didn't especially mention that, but in fact, the board reviewed the record, the whole record itself, and in fact, the IJ's opinion is almost as long as the testimony. It contains almost as many lines of text, and the testimony is only 2,060 words, where the IJ's opinion is 1,620 words. So the IJ did a job, but considering how paltry the testimony is and in view of the overwhelming evidence of the country reports that China is, one, ameliorating rapidly their policies. They do not sanction coercion, and they are more and more enforcing rules against people who do coerce. The coercion is basically occurring in other parts of the country. Xinjiang is where 90 percent of the asylum applicants come, and they have special problems there that Shanghai doesn't have. The Shanghai people do say that the fines are, and it's consistent, the fine is three times the annual salary, is the penalty, and the people in Shanghai, the consulate office there, would be in a position to know. It's not true it speaks of an unnamed official as the only evidence. In fact, there is evidence from Shanghai that they get every day, and throughout the reports, they talk about unnamed officials as a way of protecting the privacy and line of communication to the Chinese. Roberts. Thank you, Counselor. You're way over your time. I didn't mean to interrupt you, but unless there are further questions. All right. Thank you, Counselor. We'll proceed to the next case on the oral argument calendar, which is United States v. Gutierrez-Arce. Arce. Arce. Arce. Thank you.
judges: Thomas, Berzon, Mahan